WALLACE F. and MI-JA H. SMITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 2533-81.
United States Tax Court
T.C. Memo 1982-431; 1982 Tax Ct. Memo LEXIS 316; 44 T.C.M. (CCH) 622; T.C.M. (RIA) 82431; July 28, 1982. Wallace F. Smith, pro se. Daniel P. Ramthun, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1978 in the amount of $189. The issue for decision is whether petitioners are entitled to deduct the amount of $607.06 they paid in 1978 for attorneys fees and related expenses. FINDINGS OF FACT Some of the facts have been stipulated *317 and are found accordingly. Petitioners, husband and wife, who resided at Walnut Creek, California, at the time of the filing of the petition in this case, filed a joint Federal income tax return for the calendar year 1978 with the Director, Internal Revenue Service, Fresno, California. Wallace F. Smith (petitiner) is a professor at the University of California at Berkeley and was so employed in May 1969. He was also employed as a professor at the University of California, Berkeley, in the year here in issue. For some time prior to May 1969, petitioner had been under medical care for a respiratory illness and had been using cortisone. On May 20, 1969, a helicopter flew over the Berkeley campus and sprayed a chemical agent. Petitioner was working on the campus at the time the helicopter flew over the campus and sprayed the chemical. On May 20, 1969, petitioner sent a letter to the Surgeon General of the United States describing the incident and his symptoms. He requested assistance from the Surgeon General in determining the type of gas that had been sprayed over the campus because he thought it would be of assistance to him in securing medical treatment to know the type *318 of gas to which he had been exposed. He recited in the letter that he had attempted to obtain information from Herrick Hospital in Berkeley, the Berkeley Police Department, the Alameda County Sheriff's Office, the California Disaster Office in Oakland, the California Public Health Department, and the Red Cross but had not gotten the information he sought. Thereafter and continuing through the year here in issue, petitioner incurred medical expenses for treatment of his respiratory problems. In 1971, petitioner's then-marriage was dissolved. Through the years following 1969, petitioner continued to attempt to obtain information as to the chemical that was sprayed by the helicopter over the Berkeley campus on May 20, 1969. From time to time he employed attorneys to assist him in obtaining information under the Freedom of Information Act. He also made certain claims under the Workmen's Compensation Act. In 1978, petitioner sought the advice of an attorney recommended to him by an attorney who had formerly assisted him in connection with obtaining information under the Freedom of Information Act. The attorney recommended to petitioner was William Samsel. Petitioner engaged the *319 services of Mr. Samsel. During the taxable year 1978, petitioner incurred and paid the following expenses: Attorney's fees paid to Mr. Samsel
$574.00
Xeroxing
2.93
Postage
1.58
Telegram
8.55
Automobile Expense
20.00
$607.06
On his Federal income tax return for the calendar year 1978, petitioner deducted under miscellaneous deductions an amount of $1,907.06 which was explained on an attached schedule as follows: "costs arising from 5/19/69 action of President." Respondent determined that $1,300 of the $1,907.06 claimed to be deductible by petitioner with the explanation given above was alimony paid by petitioner to the former wife and this $1,300 was allowed as a deduction to petitioner as an alimony payment. The remaining $607.06, which is itemized above, was disallowed by respondent in his notice of deficiency to petitioner, with the explanation that the deductions claimed "are not allowed because there is no provision in the Internal Revenue Code for deducting costs arising from actions of the President." OPINION Although petitioner testified at some length as to the suffering and difficulty he had been caused by the various problems which he had *320 encountered since the helicopter flew over the Berkeley campus in May 1969 and sprayed a chemical, he gave very little explanation of the exact purpose for which the fee of $574 was paid to Mr. Samsel. He testified that he believed the State Compensation Insurance Fund had spread false rumors about him. He stated that he had attempted many times to get information that would enable him to solve his medical problems which had been aggravated since the day the helicopter flew over the Berkeley campus. However, his explanation of the basis for the payment of the fee to Mr. Samsel was very vague. As best we can determine, petitioner paid the fee to Mr. Samsel to obtain some form of medical information for him. [1] Prior to this testimony, petitioner had gone into detail about letters written to various people attempting to find out what chemical had been used and his attempts to find out whether the chemical used was a chemical known as "BZ." He had discussed his problem with many doctors and had sought information from many sources. Petitioner believed that he had not been dealt with fairly by various representatives of the Government. *321 Section 162, [2] provides for the allowance of all ordinary and necessary business expenses paid or incurred by a taxpayer during the taxable year in carrying on any trade or business. From the description we have given of the type information sought by petitioner, it is clear that the attorneys fees which he paid in 1978 for assistance in obtaining this information were not fees connected with his trade or business. Section 212 provides for the deduction of all ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income or the management, conservation, or maintenance of property held for the production of income. It is equally clear that the fees petitioner paid were not in connection with the production or collection of income or the management, conservation, or maintenance of property held for the production of income. In fact, petitioner stated that the attorneys fees were not paid to obtain money. He said, "They'd already offered me the check. I--if I wanted to endorse *322 that check, I wouldn't have to go to an attorney." He testified that he never cashed the check sent to him by the State Compensation Insurance Fund and that sometime after the time it was sent to him, it was canceled. On the basis of this record, there are no facts to support a claim by petitioner that the attorneys fees and related expenses he paid in 1978 were either a business expense or an expense incurred for the production or collection of income. In order to be entitled to deduct an amount paid as attorneys fees, a taxpayer must show that the deduction is allowable under some section of the Code. It appears from this record that the attorneys fees paid by petitioner were a personal expense. Section 262 specifically provides that "no deduction shall be allowed for personal, living, or family expenses." Therefore, on the basis of this record we conclude that petitioner failed to show that the attorneys fees he paid to Mr. Samsel and the related expenses were properly deductible in the year 1978. Decision will be entered for the respondent.
Footnotes
1. The following testimony leads us to this conclusion: THE COURT: Well, what did you want from him [Mr. Samsel]? THE WITNESS: Information. THE COURT: And he decided to help you and get-- THE WITNESS: So that I could-- THE COURT: --information from them, not money? THE WITNESS: Yes. That's my understanding. To put an end to this-- THE COURT: Well-- THE WITNESS: --terrible series of events concerning myself and my family. THE COURT: What kind of information was he supposed to be assisting you in getting? THE WITNESS: I had hoped that he might be able to get from that company information of the sort that--or a document indicating what it is that they commuted--communicated to these medical authorities in British Columbia. I had reason--very, very good reason to believe that at the time of the original incident that they had conspired with the University-- with Governmental authorities to hid the event that occurred--sweep it under the rug so to speak, and so--in fact, filed a fictitious item in their records concerning me indicating that I had filed some sort of document saying I had no medical expenses is quite untrue, but that is the substance of what I gather from conversations--phone conversations and other sources of information. I was having a great deal of difficulty with State Compensation Insurance Fund going well beyond its role as an insurance carrier; that they had used or they had fabricated information concerning me which was very damaging.↩
2. Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year here in issue.↩